UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

JASON HOWARD, )
)
    Plaintiff, )
) No. 5:16-CV-362-REW
v. )
)
PEARL INTERACTIVE NETWORK ) OPINION AND ORDER
INC., et al., )
)
    Defendants. )

\*\*\* \*\*\* \*\*\* \*\*\*

In this Opinion, the Court (1) evaluates the basis for (and ultimately assures itself of the existence of) diversity jurisdiction in this case, and (2) dismisses Defendant Scully under Rule 4(m). The topics arise from the issuance of two show-cause orders, *see* DE ##22 & 34, and an order providing notice to Plaintiff of the potential 4(m) dismissal, *see* DE #33. The Court has evaluated full record, including the parties' briefing on the issues. *See* DE ##23, 24, 35, 36, & 37. The matters are ripe for consideration.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

In August 2016, Jason Howard sued Pearl Interactive Network, Inc. (Pearl), Robert (Todd) Scully, Merry Korn, and Diane Schrimpf in Clark Circuit Court. *See* DE #1-1 (Complaint). Within a month, Pearl, Korn, and Schrimpf (collectively, Removing Defendants) removed the case to this court, putatively premised on the diversity of the parties. *See* DE #1 (Notice of Removal); *see also* DE #4 (Answer).[1] Judge Caldwell

---

[1] Removing Defendants have never attempted to justify removal based on federal question jurisdiction, *see also* DE ##25-1, at 2 n.2; 26, at 7-8, and the Court does not analyze that topic in this Opinion.

1

ultimately instituted a case schedule, DE #13 (Scheduling Order), and the case proceeded on a normal course of litigation. The Complaint centers on Howard's allegedly tumultuous employment relationship with Pearl (including, at least initially, accusations of discrimination, harassment, intentional infliction of emotional distress, retaliation, and breach of contract), which came to a head during the period between September 2014 and December 2015. Todd Scully, Howard's "former supervisor," DE #23, at 1, though enduring as a named defendant, has never appeared or participated in the case.

On the mid-discovery call, in September 2017, the undersigned (then the case's referred magistrate judge) raised some "doubts" concerning the existence of diversity jurisdiction. *See* DE #22, at 1. Specifically, as relevant here, the Court flagged the issue that considering Scully's citizenship "would destroy complete diversity," *id.* at 2-3, and ordered briefing on any relevant topic. The parties complied, DE ##23 & 24, and Judge Caldwell's case transfer, DE #31, sent the issues to the undersigned. Post-transfer, the Court identified yet another basis to doubt the existence of subject-matter jurisdiction and, again, ordered briefing. DE #34. The parties, again, complied. DE ##35 & 37.

## II. LAW & ANALYSIS

This scenario necessitates consideration of a number of related or interlocking jurisdiction-related concepts. The ultimate question is whether the Court has diversity jurisdiction in this case.

### A. *Background Legal Principles*

District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between," as relevant here, "citizens of different States." 28 U.S.C. § 1332(a)(1); *see also*

U.S. Const. Art. III § 2 ("The judicial power shall extend . . . to controversies . . . between citizens of different states[.]"). Courts refer to this concept as "diversity jurisdiction," a form of subject-matter jurisdiction in a case. *See Grupo Dataflux v. Atlas Global Grp., LP*, 124 S. Ct. 1920, 1925-26 (2004).

Exercising diversity jurisdiction "require[s] complete diversity of citizenship," *i.e.*, "the citizenship of each plaintiff" must be "diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 117 S. Ct. 467, 472 (1996). Thus, phrased another way, for diversity to exist, "no plaintiff" can be "a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010). "[C]omplete diversity," though, "is not a constitutional requirement." *Owen Equip. & Erecting Co. v. Kroger*, 98 S. Ct. 2396, 2402 n.13 (1978).

Importantly, "Federal courts are courts of limited jurisdiction," and "the burden of establishing" a jurisdictional basis "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 114 S. Ct. 1673, 1675 (1994). Based on these foundational principles, the Court has an omnipresent "duty to consider [its] subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). Indeed, that is just what the Court did in DE ##22 & 34 and continues to do in this Opinion. *See also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."). The Court resolves "all doubts" concerning the existence of subject-matter jurisdiction "against removal." *Her Majesty The Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989); *Fenger v. Idexx*

*Labs., Inc.*, 194 F. Supp. 2d 601, 602-03 (E.D. Ky. 2002) ("Where there is doubt as to federal jurisdiction, the doubt should be construed in favor of remanding the case to the State court[.]").

      B.     *Pearl is a citizen only of Ohio.*

The Court first addresses Pearl's citizenship. The parties initially made conflicting citizenship allegations as to Pearl. *Compare* DE #1, at ¶ 7 (Pearl alleging Ohio citizenship)*, and* DE #4, at ¶ 2 (same)*, with* DE #1-1, at ¶ 2 (Howard alleging facts that would establish Kentucky and Ohio citizenships). Neither party presented proof on the issue. If Pearl, in fact, has Kentucky citizenship, it would not be diverse from Howard, *see* DE #22, at 1, leaving the Court without subject-matter jurisdiction.

"A defendant removing a case has the burden of proving the diversity jurisdiction requirements." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). When "allegations of jurisdictional facts are challenged," the party invoking the Court's jurisdiction "bears the burden of supporting the allegations by competent proof." *Janzen v. Goos*, 302 F.2d 421, 424 (8th Cir. 1962). Here, conflicting record allegations suggested an equal likelihood that Pearl is, or is not, a citizen of Kentucky. *See, e.g.*, *Walden v. Broce Constr. Co.*, 357 F.2d 242, 244 (10th Cir. 1966) (repeating prior holding that "an allegation of diversity of citizenship alone, when challenged, is not enough"); *cf. Citizens Bank v. Plasticware, LLC*, 830 F. Supp. 2d 321, 325 (E.D. Ky. 2011) (holding that Plasticware "prove[d] its citizenship lies outside of Kentucky by a preponderance" when Citizens Bank "did not contradict" the defense's allegations).

In the briefing the show-cause order prompted, Pearl contended, per a specific analysis, that it is a citizen only of Ohio. DE #35, at 2-3. In support, Pearl attached an

affidavit of its CEO, a certificate of good standing from the Ohio Secretary of State, and various other documents. DE #35-1, at 1-6. These items of proof do, indeed, support the claim that Pearl possesses solely Ohio citizenship. Howard, assessing the same evidentiary offerings, concedes the point and no longer claims Pearl has Kentucky citizenship. *See* DE #37, at 1. Accordingly, per Pearl's (now) unchallenged assertion of solely Ohio citizenship and the solid proof Pearl tendered, the Court concludes, under the applicable standard, that Pearl is a citizen only of Ohio.

    C.    *The Court must consider the citizenship of Scully, an unserved and nonparticipating defendant, in the jurisdictional analysis.*

Next, the Court addresses issues concerning Defendant Scully. To review, the record indicates that (1) Howard is, and at all times relevant was, a Kentucky citizen, *see* DE #22, at 1; (2) Pearl, Korn, and Schrimpf are, and were at all times relevant, citizens of Ohio, *see* DE ##4, at ¶ 2; 1-1, at ¶¶ 4-5; discussion *supra* in Section II.B; and (3) Scully "is a citizen . . . of the Commonwealth of Kentucky," DE #1-1, at ¶ 3. Thus, on the face of the pleadings, Howard, the plaintiff, shares a common citizenship with Scully, a named defendant, rendering the case one without complete diversity and depriving the Court of subject-matter jurisdiction.[2]

A potential wrinkle, though, is that Scully has not appeared or participated, in any way, in this case; indeed, the parties agree that proper service has not occurred. *See* DE ##23, at 2; 24, at 1. Does the Court, nevertheless, have to consider his citizenship in assessing the existence of diversity jurisdiction? The answer, as the cases harmoniously indicate, is yes.

---

[2] Neither party has suggested a basis to believe that Scully's citizenship may have changed post-removal, even if he is now "residing" internationally. DE #24, at 2, 4; *see Kaiser v. Loomis*, 391 F.2d 1007, 1009 (6th Cir. 1968).

Simply put, courts, "in determining the propriety of removal based on diversity of citizenship, must consider all named defendants, regardless of service." *Pecherski v. Gen. Motors Corp.*, 636 F.2d 1156, 1160-61 & n.6 (8th Cir. 1981); *see also, e.g.*, *Darsie v. Cone*, No. 5:10-CV-154-KSF, 2010 WL 2923285, at *4-5 (E.D. Ky. July 22, 2010) (same, and collecting cases); *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998) ("Broussard's non-diverse citizenship cannot be ignored simply because he was an unserved defendant. A non-resident defendant cannot remove an action if the citizenship of any co-defendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant. Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service."); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1266 n.4 (9th Cir. 1992) (describing the Ninth Circuit's precedent as holding "that a defendant could not ignore an unserved, nondiverse co-defendant in seeking to remove a case to federal court based on diversity"); *Beritiech v. Metropolitan Life Ins. Co.*, 881 F. Supp. 557 (S.D. Ala. 1995) (remanding to state court on same basis); *Worthy v. Schering Corp.*, 607 F. Supp. 653, 655 (E.D.N.Y. 1985) ("It is well established that an action based on state law cannot be removed to federal district court if any nondiverse defendant is joined in the complaint, even if the nondiverse defendant was never served. . . . Where the nondiverse defendant has not been served, the action cannot be removed unless and until that defendant has been formally dropped from the case."); *cf. Lincoln Prop. Co. v. Roche*, 126 S. Ct. 606, 610 (2005) (approving diversity-based removal if, *inter alia*, "there is complete diversity between all named plaintiffs and **all named defendants**" (emphasis

added)); *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 130 (2d Cir. 1995) (same focus on the citizenship of "all named defendants").

Removing Defendants' principal argument, concerning application of the forum defendant rule, *see* DE #23, at 3-5; *see also* DE #1, at ¶¶ 11-16, fundamentally misapprehends the relevant inquiry and requires no analysis (at least at this stage). The current question is not the propriety of removal under 28 U.S.C. § 1441; the question is the existence of subject-matter jurisdiction under § 1332. *See also* § 1441(a) (authorizing removal only of "civil action[s] brought in a State court of which the district courts of the United States have original jurisdiction"); § 1441(b)(2) (predicating applicability of forum defendant rule on the case "otherwise" being "removable . . . on the basis of the jurisdiction under section 1332(a)"); § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Pecherski*, 636 F.2d at 1160 ("Section 1441(b) does not qualify the requirement of complete diversity[.]"); *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006) (stating that the forum defendant rule is "[s]eparate and apart from the statute conferring diversity jurisdiction" and is an "additional limitation on diversity-based removal jurisdiction"). The Court must, therefore, consider the citizenship of Scully, a named defendant, in evaluating the existence of subject-matter jurisdiction.

D.   *Howard fraudulently joined Scully.*

That might ordinarily end the analysis and require remand, but Removing Defendants offer an apt rejoinder: they argue that Howard "fraudulently joined" Scully to the suit. DE #23, at 5-10. Such analysis is relevant because "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne v. Am. Tobacco*

*Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (also calling this doctrine "an exception to the requirement of complete diversity"); *see also Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999); *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011).

"To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against [a] non-diverse defendant[] under state law." *Coyne*, 183 F.3d at 493. Thus, to establish fraudulent joinder and avoid remand, Removing Defendants must establish that there is no "colorable basis for predicting that [Howard] may recover against" Scully. *See id.* If the claim(s) against Scully have "even a glimmer of hope, there is no fraudulent joinder." *Murriel-Don*, 790 F. Supp. 2d at 597 (internal quotation marks removed).[3] The Court resolves "all disputed questions of fact and ambiguities in the controlling state law in favor of the non removing party," Howard. *Coyne*, 183 F.3d at 493. This test is "similar to, but more lenient than," a 12(b)(6) analysis. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012).

Removing Defendants' first subsidiary argument—that "there can be no claims asserted against a person against whom no legal action has been commenced" and that "no action has been commenced against Todd Scully because he was never served"—is frivolous. *See* DE #23, at 7. Under either federal or state law (although Removing Defendants made the argument only "under Federal Rule 4(m)," *see id.*), Howard plainly

---

[3] The Court notes, without further commenting or expounding on, Judge Thapar's extensive, foundational criticism of the fraudulent joinder doctrine. *Murriel-Don*, 790 F. Supp. 2d at 594-97; *see also Gaither v. Beam Partners, LLC*, No. 3:16-cv-94-GFVT, 2017 WL 1217166, at *3-4 (E.D. Ky. Mar. 31, 2017) (Judge Van Tatenhove agreeing). As Judge Thapar concluded, "[f]raudulent joinder is still the law of this circuit, and until the law changes, this Court will faithfully apply it." *Murriel-Don*, 790 F. Supp. 2d at 597.

8

commenced an action against Scully via filing a complaint in Clark Circuit Court and securing the issuance of a summons. The 4(m) service requirement is wholly separate from whether, at case genesis, an action began. *See, e.g.*, Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); *United States v. Wahl*, 583 F.2d 285, 289 (6th Cir. 1978) ("[A] civil action is commenced upon the filing of a complaint, and remains pending in an inchoate state until service is completed[.]"); CR 3.01; KRS 413.250; *Eades v. Clark Distrib. Co. Inc.*, 70 F.3d 441, 442-43 (6th Cir. 1995); DE #1-1, at 2 (State court record indicating summons issuance to Scully on 8/25/16, the same day as Complaint filing). The Court sees no logical or legal basis for this abbreviated argument.

Moving to substantive claim evaluation, the Court concludes, via the subsequent analysis, that Howard did not state a colorable claim against Scully.

The Complaint has 5 total Counts: (1) breach of contract; (2) harassment; (3) retaliation; (4) intentional infliction of emotional distress (IIED); and (5) sexual discrimination. Only Counts 2, 4, and 5 are reasonably in play concerning Scully. *See, e.g.*, DE #24 (Plaintiff's show-cause brief), at 5 (Howard limiting: "The Plaintiff alleged claims of hostile work environment and intentional infliction of emotional distress against Scully."). Count 2 purports to directly apply: "Plaintiff was required to endure daily offensive conduct from Defendant employee, Mr. Scully as a condition of continued employment, which created a hostile work environment." DE #1-1, at ¶ 27 (all as in original). Count 4, as phrased, also pertains to Scully: "Plaintiff, as a result of Defendants intentional behavior, workplace harassment and retaliation, suffered depression and reputational damages; forcing him to seek a medical professional for treatment of his

9

issues." *Id.* ¶ 32 (all as in original). Count 5, too, facially applies to Scully: "Plaintiff endured daily offensive comments from Mr. Scully regarding female co-workers' physical appearance and body structure and received an unwarranted inappropriate sexual e-mail, which crated an offensive work environment." *Id.* ¶ 35.

The Court can quickly dispatch Counts 2 and 5. Neither is colorable. Start with Count 2, labeled "Harassment." With Howard's specific targeting of "a hostile work environment," the claim is not colorable against Scully, under the applicable standard. *See, e.g.*, *Conner v. Patton*, 133 S.W.3d 491, 492-93 (Ky. Ct. App. 2004) ("[I]ndividual agents or supervisors who do not otherwise qualify as employers cannot be held personally liable in their individual capacities under KRS Chapter 344."); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-05 (6th Cir. 1997) (same holding); *see also* DE ##26, at 5 (Plaintiff abandoning the harassment claim); 23-1, at 5 (Depo. p. 208) ("[W]as Todd Scully harassing you because of your gender? No ma'am. Just based on my relationship with in Pearl, being a manager, would be my only explanation. I don't believe that sex, gender, age – I don't think there was any discriminatory reason for harassing me[.]"); deposition excerpts cited *infra*.

Count 5, alleging "Sexual Discrimination," under the standard, also is not colorable as to Scully. *See, e.g.*, *Bd. of Regents of N. Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 306 (Ky. 2016). Howard describes a difficult boss, but attributes his animus to bullying or other work demands, not to cognizable discrimination. DE ##25-4, at 76 (Depo. p. 208) (Howard: "I don't believe that sex, gender, age – I don't think there was any discriminatory reason for harassing me other than – if it was harassment, it would've been by bullying or expectation of delivery that I couldn't meet based on HR policies as a

manager."); 23-1, at 3 (Depo. p. 194) ("Nobody treated you differently during your employment because of your sex? Not that I'm aware of, no."); *see also* DE #26, at 5 (Plaintiff abandoning the sexual discrimination claim).

Count 4 is a closer call. In Kentucky, the tort of IIED "is intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees." *Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000). Kentucky IIED has four elements: '[1] the wrongdoer's conduct must be intentional or reckless; [2] the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; [3] there must be a causal connection between the wrongdoer's conduct and the emotional distress[;] and [4] the distress suffered must be severe." *Id.* at 913-14. The IIED tort requires "more than bad manners" and "hurt feelings." *Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012). It does not cover conduct that is "cold, callous, and lacking sensitivity." *Goebel v. Arnett*, 259 S.W.3d 489, 493 (Ky. Ct. App. 2007). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, [a] case [resulting in liability] is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 789 (Ky. 2004), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2015) (regarding substantive defamation requirements).

As Removing Defendants argue, a court "may 'pierce the pleadings' and consider summary judgment evidence" in this context. *See Casias*, 695 F.3d at 433. "The court

may look to material outside the pleadings for the limited purpose of determining whether there are undisputed facts that negate the claim." *Id.* (internal quotation marks removed).[4] Removing Defendants base the argument that Howard's IIED claim is not colorable against Scully on Howard's "deposition testimony." DE #23, at 9-10.

Howard, in his depositions, repeatedly indicated that he had no direct problem with Scully. *See* DE ##25-4, at 67 (Depo. p. 158) ("I had no – I had no problem – I could've worked under Todd [Scully] and been fine. . . . I could've stayed there. He was treating me fine."); 23-2, at 2 (Depo. p. 46) ("I never once felt like my job was in jeopardy through Todd at all."); *id.* (Depo. p. 48) ("I don't think he was out for me."); *id.* at 3 (Depo. p. 129) ("I've never been yelled at by him. . . . I mean, he's never once hollered at me[.]"); *id.* (Depo. p. 130) ("[I]t was a high-pressure job and nothing that I would feel personally that he was attacking. I never felt physically threatened or anything of that, you know."); *id.* at 4 (Depo. p. 153) ("He's not treating me unprofessionally. We're not screaming at each other in meetings."); *id.* (Depo. p. 156) ("[H]e treated me okay. . . . I think he treated me like gold compared to some of the other people[.]").

The type of intentional, outrageous conduct required for a colorable IIED claim simply does not square with this undisputed factual description, taken from Plaintiff's own mouth. *See, e.g.*, *Osborne*, 31 S.W.3d at 913-14 (targeting "behavior that is truly

---

[4] The Court sees some conflict between these general principles and the Circuit's statement in *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.* that "a district court engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." 491 F.3d 320, 330 (6th Cir. 2007). Here, "the facts necessary to sustain jurisdiction" are simply each party's citizenship(s). The identity of Scully's citizenship plainly does "not implicate the merits of" Howard's claims. Under *Gentek*, the Court could potentially avoid "a factual inquiry" altogether, but, out of an abundance of caution, due to the dictates of other Sixth Circuit cases and the fraudulent joinder element, engages in one.

outrageous, intolerable and which results in bringing one to his knees" and conduct so "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality"). Howard plainly does not describe conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Stringer*, 151 S.W.3d at 789.[5]

Further, in the pleadings and case record, Howard ties the claimed emotional distress (an element of the claim) only to the job reassignment and discharge. *See* DE #1-1 (Complaint), at ¶¶ 20 ("Plaintiff experienced extreme stress, insecurities and sadness as a result of the restructuring."), 22 ("Since the termination of employment, Plaintiff has suffered depression[.]"). In deposition, Plaintiff limited the IIED claim to the events of termination. *See* DE #25-4, at 73 (Depo. p. 194) ("You've also made a claim for intentional infliction of emotional distress. Yeah. What is that – what is that based on? I lost my job[.]"); *id.* at 74 (Depo. p. 198) ("Well, I'm asking you about intentional infliction of emotional distress. Okay. And you're telling me that it's because of your termination? Absolutely."). Critically, though, Howard does not claim that Scully had

---

[5] This jibes with specific prior scenarios. For example, courts have not found the elements of IIED when an individual told a plaintiff, who had just delivered a stillborn baby and was hysterical, to "shut up" and that the baby would be "disposed of" at the hospital, when a person shot and killed a beloved family dog, when a person chained a high school student to a tree by his ankle and neck, and when a person erected a billboard referencing a person's status as a child molester. *Stringer*, 151 S.W.3d at 790-91. Even an improper burial does not qualify as "outrageous and intolerable." *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 545 (Ky. Ct. App. 2013). If those examples do not count, surely having a demanding boss, generally unpleasant in the workplace, also would not count. *See, e.g.*, *Kastor v. Cash Express of Tenn., LLC*, 77 F. Supp. 3d 605, 615 (W.D. Ky. 2015) (holding that "certainly unpleasant" workplace behavior does not rise to the level of IIED); *Farmer v. Dixon Elec. Sys. & Contracting, Inc.*, No. 10-326-ART, 2013 WL 2405547, at *7 & 7 n.4 (E.D. Ky. May 31, 2013) (same).

any role or hand in the restructuring or eventual termination. Further, in Kentucky, "[m]ere termination clearly does not rise to the level of outrageous conduct required to support an IIED claim." *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 572 (Ky. Ct. App. 2005).

Thus, per Plaintiff himself, Scully did not directly target Howard, and Howard's emotional harm, if any, came from acts and decisions not involving Scully. *See Osborne*, 31 S.W.3d at 913-14 (including as an IIED element that "there must be a causal connection between the wrongdoer's conduct and the emotional distress"). Perhaps cognizant of these obvious faults—and of vital importance—Howard has conceded "that the evidence is not sufficient to support his claim[] for" IIED. DE #26, at 5 ("abandon[ing]" the IIED claim). Thus, for these cascading reasons, the Court's evidentiary review demonstrates that there are "undisputed facts that negate the [IIED] claim." *Casias*, 695 F.3d at 433.[6]

---

[6] The Court senses some degree of tension in the Sixth Circuit's pronouncements on this issue. How can an analysis be more lenient than that applicable to a motion to dismiss, yet also permit consideration of materials outside the pleadings? *Cf. Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995). Does the Court assume the Complaint allegations are true, or engage in a summary judgment-style inquiry to probe verity? *Compare Casias*, 695 F.3d at 433 ("more lenient than" Rule 12(b)(6) analysis), *with id.* (in the next sentence, permitting courts to "consider summary judgment evidence"). The harmonization likely comes in the following sentence, as the Court has already described, where *Casias* instructs to look at material outside the pleadings only "for the limited purpose of determining whether there are undisputed facts that negate the claim." *Id.* (internal quotation marks removed).

That still, to the Court, sounds mostly in summary judgment analysis, though perhaps without incorporating the entire Rule 56 rubric. *See Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952-54 (6th Cir. 2011) (wrestling with the same tension and adopting the Fifth Circuit's attempt at synchronization); *id.* at 955-56 (identifying "at least two problems with th[e] approach" of "effectively granting summary judgment for failure to show a genuine issue of material fact" in this context); *Winburn v. Liberty Mut. Ins. Co.*, 933 F. Supp. 664, 666 (E.D. Ky. 1996) ("noting the limited nature of the Court's examination of the merits of the plaintiffs' claims" in this context). In this circumstance,

In a scenario (as here) where Plaintiff has abandoned the relevant claims (and for the other reasons stated), there is not "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). To the contrary, Howard has conceded that there will, in fact, be no liability on the at-issue claims.[7] Plaintiff himself views the record as not supporting a valid theory as to Scully. DE #26, at 5. The Court simply cannot treat as valid claims Plaintiff concedes have inadequate support on undisputed facts. Accordingly, the Court concludes that Removing Defendants have established that Howard fraudulently joined Scully to the suit. Scully's inclusion, therefore, does "not defeat removal on diversity grounds." *Coyne*, 183 F.3d at 493. The Court, despite the

---

the burden remains squarely on the removing party. *Coyne*, 183 F.3d at 493 ("To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law."); *Walker*, 443 F. App'x at 956 ("This piercing permits consideration of such undisputed facts that negate the claim. It is not intended to provide an opportunity to test the sufficiency of the factual support for a plaintiff's claim, as is done in a Rule 56 motion."); *id.* (criticizing district court for going "beyond the relevant inquiry—whether Plaintiffs have a colorable claim under Kentucky law—and instead inquir[ing] whether Plaintiffs had adequate evidentiary support for their claim, the traditional Rule 56 inquiry").

The procedural posture here surely pushes the pleading-piercing inquiry to its most extreme point—this case has been, essentially, fully litigated, and the parties have engaged in plenary summary judgment briefing. Threading *Walker*'s needle may not always be an easy task, but the Court, in its treatment here, assiduously hews the line. The Court has not, despite the pending Rule 56 motion, undertaken a Rule 56 analysis. Rather, the Court has consulted the summary judgment briefing—*i.e.*, pierced the pleadings—merely to probe for undisputed facts. The Court found them in, *e.g.*, Howard's own words in deposition and Howard's (obviously undisputed) concessions that he has no valid claim against Scully.

[7] The Court also feels some institutional responsibility for the manner in which the litigation has progressed. The Court, then acting as the magistrate judge on the case, flagged the potential jurisdictional issue in September 2017. No further judicial action occurred on the question until post-case-transfer, in July 2018. In the interim, the parties fully briefed a dispositive motion and, the filings indicate, substantially narrowed the claims in the case.

15

nominal presence of the non-diverse Scully, yet has diversity jurisdiction in this case. *See id.*

  E. *Satisfied that subject-matter jurisdiction exists, the Court dismisses Scully under Rule 4(m).*

Assured of its own jurisdiction,[8] the Court proceeds to consideration of the issues DE #33 discussed. *See also* DE #23, at 2 n.1. Rule 4(m), in relevant part, reads:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant[.]

Here, the parties agree that proper service on Scully has not occurred, *see* DE ##23, at 2; 24, at 1, well over 90 days have passed since the complaint was filed, and the Court gave Howard notice of its intent "to dismiss Defendant Robert T. Scully, without prejudice, for failure of timely service." DE #33, at 1. Howard did not object to the proposed dismissal. DE #36, at 1-2. Accordingly, the Court dismisses Defendant Scully, without prejudice, under Rule 4(m).

## III. CONCLUSION

Per this sequential analysis, the Court **DISCHARGES** the show-cause orders (DE ##22 & 34), **FINDS** that diversity jurisdiction exists in this case, and **DISMISSES** Defendant Scully, without prejudice, per Rule 4(m). The case proceeds between only Howard and Removing Defendants.

---

[8] This approach in sequencing avoids potentially thorny questions under Rules 19 and 21, including assessing Scully's necessity and / or indispensability, inquiries the parties do not undertake. *See, e.g.*, *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763 (6th Cir. 1999); *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 545 (6th Cir. 1994); *Grant Cnty. Deposit Bank v. McCampbell*, 194 F.2d 469, 472 (6th Cir. 1952); *see also Pollington v. G4S Secure Solutions (USA) Inc.*, 712 F. App'x 566, 566 (6th Cir. 2018); *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1321 (11th Cir. 2017).

This the 12th day of July, 2018.

Signed By:
*Robert E. Wier*  REW
United States District Judge